1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

IN RE HELLER EHRMAN LLP,

No. C 11-04848 CRB

12

Liquidating Debtor.

**MEMORANDUM AND ORDER
DENYING MOTION TO WITHDRAW
THE REFERENCE**

13
_____/

14

HELLER EHRMAN LLP, Liquidating
Debtor,

15

Plaintiff,

16
v.

17

ARNOLD & PORTER, LLP, ET AL.,

18

Defendants.

_____/

19
20

    This case deals with the parameters of the Supreme Court's recent decision in Stern v.

21

Marshall, 131 S. Ct. 2594 (2011).  Stern v. Marshall held bankruptcy judges did not have

22

Article III constitutional authority to enter final judgment under 28 U.S.C. § 157(b)(2)(C) on

23

a debtor's state-law counterclaim that is not resolved in the process of ruling on the creditor's

proof of claim.  131 S. Ct. 2594, 2608.

24

    Sixteen law firm defendants[1] have asked this Court to withdraw from the bankruptcy

25

judge the cases pending against them by the Plan Administrator for Heller Ehrman LLP

26

("Heller").  The cases stem out of Heller's dissolution, and the shareholders movement to

27

other law firms.  Heller is now suing those other law firms to recover profits from unfinished

28

_____

    [1] Heller had settled with ten of the sixteen firms at the time it filed its Opposition, and anticipated
settling with two more firms prior to the hearing date.  Opp'n at 7 & n.6.

United States District Court
For the Northern District of California

1    business Heller shareholders brought with them to new firms, under the theory that they were

2    fraudulent transfers.

3        The law firm defendants ("Defendants") argue the reasoning of <u>Stern</u> precludes

4    bankruptcy judges from entering a final judgment on fraudulent conveyance actions brought

5    pursuant to 18 U.S.C. § 157(b)(2)(H).  Heller argues the decision is a "narrow" one, and

6    should not be read to apply to a statutory provision not at issue in <u>Stern</u>.  The Court

7    concludes that while <u>Stern</u> prevents the bankruptcy court from entering a final judgment on

8    the claim at issue here, it does not require that this Court withdraw the bankruptcy reference.

9    Moreover, for the reasons stated below, Defendants have not established cause for

10   permissive withdrawal of the reference.  Accordingly, the Court DENIES the motion to

11   withdraw, and requests the bankruptcy court to prepare proposed findings of fact and

12   conclusions of law if necessary.

13   **I.      FACTUAL BACKGROUND**

14       Heller's Chapter 11 Bankruptcy case commenced more than two years ago.  Decl. of

15   Jonathan Hughes in support of Arnold & Porter Mot. to Withdraw the Reference ("Hughes

16   Decl.") (dkt. 1) Ex. A (Chapter 11 Voluntary Petition).  The bankruptcy court confirmed

17   Heller's liquidation plan on August 16, 2010.  Hughes Decl. Ex. B (Notice of Entry of

18   Confirmation Order).

19       As the Reorganized Debtor, Heller is seeking to recover from the defendant law firms

20   the value of profits received by them with respect to unfinished business that was being

21   handled by Heller at the time of its dissolution, and then taken to defendant law firms by

22   former Heller shareholders.  As part of its dissolution process but prior to the initiation of

23   bankruptcy proceedings, Heller agreed to waive its rights under <u>Jewel v. Boxer</u>, 156 Cal.

24   App. 3d 171 (1984), to recover fees associated with such unfinished business that were

25   generated by its attorneys after their departure.  Heller <u>now</u> seeks to avoid what is generally

26   known as the "<u>Jewel</u> Waiver" as constituting actual or constructive fraudulent transfers

27

28

United States District Court
For the Northern District of California

1  pursuant to 11 U.S.C. §§ 548 and 550, as well as under California Civil Code §§ 3439.04,

2  3439.05, 3439.07 via 11 U.S.C. § 544.[2]

3      On June 23, 2011, the Supreme Court issued its opinion in <u>Stern</u>.  Heller filed

4  amended complaints in late June and early July, and most of the Defendants answered and

5  made a jury demand.  Discovery began in the case, and has been proceeding apace with

6  exchanges of RFPs, RFAs, and interrogatories.  Sullivan Decl. ¶ 14.

7      In early September, the Defendants filed motions to withdraw the reference, which the

8  bankruptcy judge consolidated.  The bankruptcy judge also filed a Recommendation pursuant

9  to Bankruptcy Local Rule 5011-2(b), suggesting that this Court deny the motions to

10 withdraw the reference.  <u>In re Heller Ehrman LLP</u>, Bankr. No. 08-32514, 2011 WL 4542512

11 (Bankr. N.D. Cal. Sept. 28, 2011).  Defendant law firms Arnold & Porter, Jones Day, Davis

12 Wright Tremaine, Foley & Lardner LLP and Winston & Strawn LLP thereupon filed motions

13 with this court to withdraw the reference, Heller opposed these motions, and Jones Day, and

14 Orrick, Herrington & Sutcliffe (taking over for Arnold & Porter, which settled), filed replies

15 joined by other Defendants.  The Court held a hearing on the matter on November 18, 2011.

16 **II.    LEGAL STANDARD**

17     The Northern District of California's Local Rules require that all cases and

18 proceedings "related to" a bankruptcy case be referred to a bankruptcy court.  B.L.R. 5011-

19 1(a); <u>see also</u> 28 U.S.C. § 157(a).  The court "may withdraw in whole or in part, any case

20 proceeding referred, on its own motion or on timely motion of any party, for cause shown."

21 28 U.S.C. § 157(d).  Clearly, good cause for withdrawal would be the absence of jurisdiction

22 to adjudicate the action.  However, even if jurisdiction exists, a district court may withdraw

23 the reference in its discretion.  The Defendants here argue the Court must withdraw the

24 reference because the Bankruptcy Court no longer has jurisdiction to hear the case under the

25

26     [2] Similar proceedings have been filed here as were filed in the Brobeck bankruptcy, which was
    resolved by settlement.  <u>Greenspan v. Orrick, Herrington & Sutcliffe (In re Brobeck Phleger & Harrison</u>
27  <u>LLP)</u>, 408 B.R. 318 (Bankr. N.D. Cal. 2009).  The <u>Brobeck</u> bankruptcy judge, the same bankruptcy
    judge presiding here, did issue an order denying summary judgment in <u>Brobeck</u>.  In that order, he
28  indicated new law firms would be liable as immediate transferees despite a similar <u>Jewel</u> Waiver in the
    amended partnership agreement.  <u>Id.</u> at 346-48.

3

1   statute (mandatory withdrawal), or, in the alternative, the Court should exercise its discretion

2   to withdraw the reference (permissive withdrawal).

3        As to permissive withdrawal, the Ninth Circuit has held that a district court should

4   consider several factors, including "the efficient use of judicial resources, delay and costs to

5   the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and

6   other related factors" in the exercise of its discretion.  Sec. Farms v. Int'l. Bhd. of Teamsters

7   (In re Security Farms), 124 F.3d 999, 1008 (9th Cir. 1997).  The party seeking withdrawal of

8   the reference bears the burden of showing that the reference should be withdrawn.  Carmel v.

9   Galam (In re Larry's Apartment, LLC), 210 B.R. 469, 472 (Bankr. D. Ariz. 1997).

10  **III.   DISCUSSION**

11       In Stern, the Supreme Court held that designation of state law counterclaims as "core"

12  in the bankruptcy statute was insufficient to find it constitutional for the bankruptcy court to

13  render a final judgment on those counterclaims.  In light of that holding, the Defendants ask

14  this Court to find that Stern dictates that a bankruptcy judge does not have constitutional

15  authority under Article III to enter a final judgment on the fraudulent conveyance actions at

16  issue here.  While fraudulent conveyance actions are also designated as "core" in the

17  bankruptcy statute, they were not at issue in Stern.  Thus, the question is whether the holding

18  of Stern applies to other "core" matters in the statute.  Upon examination, the Court

19  determines the reasoning of Stern does apply to the fraudulent conveyance claims in this

20  case, and that the bankruptcy court cannot enter a final judgment on these claims.

21       As a consequence of this holding, this Court must determine whether the reference

22  should be withdrawn, either because the law compels withdrawal or, if not, withdrawal is

23  warranted in the exercise of this court's discretion.  The Defendants' argument for mandatory

24  withdrawal is that there is no statutory authority for the bankruptcy court to retain

25  jurisdiction of the actions for the purpose of issuing proposed findings of fact and

26  conclusions of law.  Because fraudulent conveyance actions are "core" actions under the

27  bankruptcy statute, Defendants assert that they are not susceptible to adjudication by way of

28  proposed findings of fact and conclusions of law.

United States District Court
For the Northern District of California

1    Additionally, Defendants maintain in the alternative that under the circumstances of

2    this case a proper exercise of discretion mandates permissive withdrawal.

3    The Court disagrees with both positions and finds that <u>Stern</u> does not require

4    withdrawal.  Moreover, neither <u>Stern</u> nor the law of this Circuit demonstrates that these

5    actions would benefit from withdrawal at this time.

6    **A.    The Impact of <u>Stern v. Marshall</u>**

7    <u>Stern v. Marshall</u> held it was unconstitutional for a bankruptcy judge to enter a final

8    judgment on a debtor's state law counterclaim that was not resolved in the process of ruling

9    on a creditor's proof of claim.  131 S. Ct. at 2620.  Whether <u>Stern</u> should be read to hold that

10   bankruptcy judges do not have constitutional authority to enter final judgments in fraudulent

11   conveyance actions turns on whether the court applies only the strict dictate of the holding,

12   or rather looks to the thrust of the reasoning the Court used in coming to that holding.  Heller

13   argues in favor of a narrow reading of the holding of <u>Stern</u>, stating by its face it does not

14   apply to fraudulent conveyance actions.

15   In support of this position, Heller points to the limiting language in the <u>Stern</u> opinion.

16   The decision includes several passages where the Supreme Court demonstrates its intention

17   that the case have a narrow holding.  "We do not think the removal of counterclaims such as

18   Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the

19   current statute; we agree with the United States that the question presented is a 'narrow'

20   one."  <u>Stern</u>, 131 S. Ct. at 2620.  In announcing the holding, the Supreme Court stated that

21   "Congress, in one isolated respect, exceeded [the Article III] limitation in the Bankruptcy Act

22   of 1984."  <u>Id.</u>  The strict language of the holding does not on its face remove any other claims

23   defined as "core" under the statute from core bankruptcy jurisdiction.  Thus, arguably, it does

24   not require a district court to remove fraudulent conveyance actions – also defined as "core"

25   under the statute – from core bankruptcy jurisdiction and consequently, from the bankruptcy

26   judge's authority to render a final decision.

27   Moreover, the Supreme Court in <u>Stern</u> also discussed how the state law counterclaim

28   at issue was "in no way derived from or dependent upon bankruptcy law."  131 S. Ct. at

5

**United States District Court**
For the Northern District of California

2618.  In contrast, some courts have suggested that fraudulent conveyance actions are distinguishable on this ground.  "In point of fact, the process of garnering fraudulently-transferred assets back onto the bankruptcy estate – to the resultant benefit of all creditors – is one of those proceedings which is by its very nature essential to the adjustment and restructuring of debtor-creditor relationships that is at the core of federal bankruptcy jurisdiction."  Kelley v. JPMorgan Chase & Co., Nos. 11-193, 11-194, 11-196, 11-197, 2011 WL 4403289, at *5 (D. Minn. Sept. 21, 2011) (citing In re Wencl, 71 B.R. 879, 882 (Bankr. D. Minn. 1987)).  While not conclusively deciding the issue, that Court determined it was not required to withdraw the reference from the bankruptcy court following Stern.  Kelley, 2011 WL 4403289, at *6; In re Am. Bus. Fin. Servs., 457 B.R. 314, 320 (Bankr. D. Del. July 28, 2011) (finding Stern did not deprive it of ability to enter final judgment on fraudulent transfer claim); In re Innovative Comm. Corp., Bankr. No. 07-30012, Adv. No. 08-3004, 2011 WL 3439291, at *3 (Bankr. D.V.I. Aug. 5, 2011) (same).

The Court finds these arguments unpersuasive given the reasoning used by the Supreme Court in Stern.  Stern relied mainly on two prior bankruptcy cases in coming to its decision: Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) and Granfinanciera, S.A. v. Norberg, 492 U.S. 33 (1989).  In Northern Pipeline, the plurality held state law counterclaims filed by a debtor against a third party were claims that needed to be finally decided by an Article III adjudicator because they did not fall into any of three exceptions to Article III powers: (1) territorial courts; (2) courts martial; and (3) when a "public right" is involved.  458 U.S. at 64-70.  The plurality determined that the state law counterclaims did not implicate any "public right," though the restructuring of debtor-creditor relations, which is at the "core" of the federal bankruptcy power, may well be "public rights."  Id. at 71-72.  Thus, since the state law counterclaims at issue were not "public rights," their final adjudication could not be assigned to an Article I bankruptcy judge.

Following Northern Pipeline Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, which divides the proceedings before the bankruptcy court

United States District Court
For the Northern District of California

1  into "core" and "non-core" proceedings, and gives Bankruptcy Judges final adjudicative

2  authority over "core" matters, while limiting them to issuing recommendations in "non-core"

3  matters.  See In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 704-05 (2d Cir. 1995).  The

4  purpose of the division is to place final adjudicative authority over "public rights" with the

5  bankruptcy court, but restrict final determination of matters not at the "core" of the

6  Congressionally created right to bankruptcy discharge to the Article III courts.  See Stern,

7  131 S. Ct. at 2610-11.  Fraudulent conveyance actions are categorized as "core" under the

8  statute.  18 U.S.C. § 157(b)(2)(H).

9       Granfinanciera principally addressed the question of whether a defendant had a

10  Seventh Amendment right to a jury trial in a fraudulent conveyance action despite the

11  action's designation as a "core proceeding" in the bankruptcy statute.  In coming to its

12  decision, the Court addressed whether fraudulent conveyance actions were properly

13  characterized as "private rights" or "public rights."  "Although the issue admits of some

14  debate, a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. §

15  548(a)(2) seems to us more accurately characterized as a private rather than a public right as

16  we have used those terms in our Article III decisions."  Granfinanciera, 492 U.S. at 55; see

17  also id. at 56 ("There can be little doubt that fraudulent conveyance actions by bankruptcy

18  trustees – suits which . . . constitute no part of the proceedings in bankruptcy but concern

19  controversies arising out of it – are quintessentially suits at common law that more nearly

20  resemble state law claims brought by a bankrupt corporation to augment the bankruptcy

21  estate than they do creditors' hierarchically ordered claims to a pro rata share of the

22  bankruptcy res.  They therefore appear matters of private rather than public right.") (citations

23  omitted).  Thus, the Supreme Court found a fraudulent conveyance action subject to Article

24  III judicial power because such a claim is properly characterized as a "private right" under

25  the Court's Article III jurisprudence.

26       The Supreme Court relied upon and reiterated this language in Granfinanciera in

27  holding that the counterclaim at issue in Stern could not be finally decided by a bankruptcy

28  court because it did not fall into the "public rights" exception to the exercise of Article III

7

judicial power.  131 S. Ct. at 2611-614.  The Court stated the "counterclaim – like the fraudulent conveyance claim at issue in Granfinanciera – does not fall within any of the varied formulations of the public rights exception in this Court's cases."  Id. at 2614 (emphasis added).  Thus, Stern specifically linked the public rights exception in the Seventh Amendment context from Granfinanciera to the question of whether an Article I bankruptcy court had authority to enter a final judgment on a claim, finding a determination in one context dispositive of the other context as well.

The Supreme Court continued that the filing of a claim against the estate "[i]n no way affects the nature of [debtor's] counterclaim for tortious interference as one at common law that simply attempts to augment the bankruptcy estate – the very type of claim that we held in Northern Pipeline and Granfinanciera must be decided by an Article III court."  Id. at 2616 (emphasis added).  By likening the claim in question explicitly to the fraudulent conveyance claims in Granfinanciera, this Court believes that Stern clearly implied that the bankruptcy court lacks constitutional authority to enter final judgment on the fraudulent conveyance claims presented here.

### B.   Withdrawal of the Reference

Having concluded that the bankruptcy court cannot enter a final judgment on a fraudulent conveyance action, the question remains whether the Court is required to withdraw the reference, or, if not required, exercise its discretion to do so.  For the reasons stated below, this Court finds the bankruptcy court has authority to enter proposed findings of fact and conclusions of law on the fraudulent conveyance claims, and thus, mandatory withdrawal of the reference is not required.  In addition, the Court determines that it would be the most efficient use of judicial resources for the bankruptcy court to keep the actions at this point, and thus, declines to exercise its discretion to withdraw the reference.  The Court will address the two questions in turn.

### 1.   Withdrawal of the Reference is Not Required

Defendants argue first that withdrawal of the reference is mandatory because the bankruptcy court lacks express statutory authority to submit proposed findings of fact and

8

1   conclusions of law on fraudulent conveyance claims post-<u>Stern</u>.  The bankruptcy code

2   specifically provides that a bankruptcy court may hear and "submit proposed findings of fact

3   and conclusions of law to the district court," subject to de novo review, in a proceeding "that

4   is not a core proceeding."  28 U.S.C. § 157(c)(1) (emphasis added).  However, since

5   fraudulent conveyance matters, such as those at issue here, are expressly "core" matters

6   under 28 U.S.C. § 157(b)(2)(H) there is no explicit comparable authority to follow a similar

7   procedure.  Defendants argue that even if one would speculate that Congress would have

8   allowed bankruptcy courts to render proposed findings of fact and conclusions of law in core

9   proceedings had they foreseen <u>Stern</u>, a federal court is not free to rewrite a statutory scheme

10  in anticipation of what Congress might have wanted.  <u>Seminole Tribe of Fla. v. Florida</u>, 517

11  U.S. 44, 75-76 (1996).  Thus, defendants argue that absent explicit authority bankruptcy

12  courts cannot follow this procedure.  They cite the opinion of the bankruptcy court in <u>In re</u>

13  <u>Blixseth</u> in support of this conclusion.  Bankr. No. 09-60452-7, Adv. No. 10-0088, 2011 WL

14  3274042, at *12 (Bankr. D. Mont. Aug. 1, 2011) (holding it had no authority to enter

15  proposed findings of fact and conclusions of law on a "core" fraudulent conveyance claim).

16       This Court finds the reasoning of Defendants and the <u>Blixseth</u> Court unpersuasive.

17  First, Title 28 does not prohibit the use of this procedure.  The absence of an explicit

18  provision is not a prohibition.  Second, Section 157(a)(1) of the Judicial Code contains a

19  broad grant of discretion to district courts.  They "may provide that any and all cases under

20  title 11 and any or all proceedings arising under title 11 or arising in or related to a case

21  under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. §

22  157(a)(1).  Section 157(b) also provides broad authorization to bankruptcy judges to "hear

23  and determine all cases under title 11 and all core proceedings arising under title 11, or

24  arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to

25  review under section 158 of this title."  28 U.S.C. § 157(b)(1).  Thus, the statute contains

26  general grants of broad authority to both district and bankruptcy courts.

27       Since Congress delegated broader authority to bankruptcy courts in core matters than

28  non-core matters, 28 U.S.C. § 157(b)(1), (c)(1), and the delegation included the authority to

hear and determine all cases and enter appropriate orders, 28 U.S.C. § 157(b)(1), there appears to be no reason why bankruptcy courts cannot continue to hear all pre-trial proceedings and enter as an appropriate order proposed findings of fact and conclusions of law in the manner authorized by Section 157(c)(1).

Tellingly, this approach was favorably described in <u>Stern</u>: "Pierce has not argued that the bankruptcy courts 'are barred from hearing all counterclaims' or proposing findings of fact and conclusions of law on the matters, but rather that it must be the district court that finally decides them.  We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the statute; we agree with the United States that the question presented here is a 'narrow one.'" 131 S. Ct. at 2620.  Removing fraudulent conveyance actions from core bankruptcy jurisdiction, and also determining bankruptcy courts could not enter proposed findings of fact and conclusions of law on such actions, would meaningfully change the division of labor in the statute between bankruptcy and district courts.  This Court does not believe that such a meaningful change is consistent with the intention of the Supreme Court.  Rather, the logical conclusion is that the bankruptcy court may enter proposed findings of fact and conclusions of law on such actions even though it may no longer finally decide them.

Several district courts, in this Circuit and elsewhere, have reached the same conclusion.  <u>See, e.g.</u>, <u>In re Canopy Fin., Inc.</u>, No. 11-5360, 2011 WL 3911082, at *5 (N.D. Ill. Sept. 1, 2011) (finding that even if entering a final judgment might be unconstitutional, "the statute would still allow bankruptcy courts to 'hear' all those claims, even if they remain core proceedings. . . .  Given that bankruptcy courts may propose findings of fact and conclusions of law in non-core proceedings, it is reasonable that they could employ the same procedure in core proceedings"); <u>In re The Mortgage Store, Inc.</u>, No. 11-0439, 2011 WL 5056990, at *6 (D. Haw. Oct. 5, 2011) (rejecting <u>Blixseth</u> and instead noting that "the court has little difficulty in finding that Congress, if faced with the prospect that bankruptcy courts could not enter final judgments on certain 'core' proceedings, would have intended them to fall within 28 U.S.C. § 157(c)(1) granting bankruptcy courts authority to enter findings and

recommendations"); <u>Kelley</u>, 2011 WL 4403289 at *6 (agreeing that even if the bankruptcy judge could not issue a final judgment "he has the unquestioned authority to conduct pretrial proceedings and submit proposed findings of fact and conclusions of law to the district court"); <u>see also</u> <u>In re Emerald Casino, Inc.</u>, – B.R. –, Bankr. No. 02-22977, Adv. No. 08-0972, 2011 WL 3799643, at *6 n.1 (Bankr. N.D. Ill. Aug. 26, 2011) ("[T]o the extent that the estate's claims are not subject to a final judgment by the bankruptcy court, they are non-core, and fully within the definition of related-to jurisdiction in § 157(c)(1)."). This Court agrees with the reasoning of the other district courts to address this question, and finds the bankruptcy statute does not require mandatory withdrawal.

Indeed, even the district court that held that <u>Stern</u> dictates fraudulent conveyance actions cannot be finally determined by a bankruptcy court, and permissively withdrew the reference, rejected the argument that the bankruptcy court did not have statutory authority to enter proposed findings of fact and conclusions of law. <u>See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert Brothers LLP)</u>, No. 11-5994 et. al., 2011 WL 5244463, at *7 (S.D.N.Y. Nov. 2, 2011). While that Court found that the use of such a procedure weighed in favor of withdrawing the reference, it had explicitly found such a procedure acceptable. <u>In re Coudert Brothers LLP</u>, 2011 WL 5244463, at *7 & n.3 ("This Court recently found that reviewing de novo determinations of the Bankruptcy Court in 'core' matters that nevertheless involve private rights best effectuates the Congressional intent behind the 1984 Act, as well as the Supreme Court's admonishment in <u>Stern</u> that the division of labor between the District Court and the Bankruptcy Court should be disturbed as little as possible.") (citing <u>Retired Partners of Coudert Brothers Trust v. Baker & McKenzie LLP</u>, 2011 U.S. Dist. Lexis 110425, at *35-41 (S.D.N.Y. Sept. 22, 2011)).

Thus, for the foregoing reasons, the Court finds the bankruptcy court has statutory authority to enter proposed findings of fact and conclusions of law in the matter, which then would be subject to *de novo* review and final judgment in the district court.

### 2.    Permissive Withdrawal is not Warranted

Given the Court's conclusion that it is not required to withdraw the reference from the bankruptcy court, it now turns to the second question: should the Court exercise its discretion to do so?  In determining whether to exercise discretion, the Court looks to the factors set out by the Ninth Circuit: (1) efficient use of judicial resources; (2) delay and costs to the parties; (3) uniformity of bankruptcy administration; (4) the prevention of forum shopping; and (5) other related factors.  Sec. Farms, 124 F.3d at 1008.  Defendants argue the factors weigh in favor of withdrawal at this point in the action, while Heller argues the prudent course is to leave the action with the bankruptcy judge.  The Court finds that since withdrawal would not be an efficient use of judicial resources, the factors do not clearly demonstrate good cause for withdrawal at this point in the action, and declines to exercise its withdrawal discretion.

### a.    Judicial Economy

Defendants argue that since after Stern fraudulent conveyance claims will be subject to de novo review, judicial economy weighs in favor of withdrawing the reference for several reasons.

First, Defendants maintain that the uncertainty over the powers of the bankruptcy court could lead to a lengthy and complicated dispute in motions practice.  One bankruptcy judge has cited this uncertainty, fearing that the "action would be bogged down in procedural complications, aggravated by the Supreme Court's recent decision in Stern v. Marshall," and "tied in procedural knots by motion practice, here and in the District Court," and that "the additional litigation resulting from my inability to fully rule will have its own Bleak House implications."  In re Bearingpoint Inc., 453 B.R. 486, 488 (Bankr. S.D.N.Y. July 11, 2011).  That case did not actually involve a motion to withdraw the reference, but rather, a motion for relief from a requirement in a confirmation plan that the trustee's non-core state law tort claims be brought in bankruptcy court rather than state court.  The Court determined that because of concerns over delay from motions practice, the trustee could file the non-core claims in state court.  Thus, it is not analogous to the situation here, and the Court does not

1    find this reasoning persuasive.  This is particularly so given that the Court has determined the

2    reach of <u>Stern</u> in this case already.

3         Second, Defendants contend that withdrawal will not delay discovery because this

4    case is in the earliest stages of discovery.[3]  <u>See</u> <u>In re Joseph DelGreco & Co., Inc.</u>, No. 10-

5    6422, 2011 WL 350281, at *5 (S.D.N.Y Jan. 26, 2011) (withdrawal appropriate where

6    plaintiff did not assert "that the bankruptcy court is particularly familiar with the facts that

7    underlie the legal malpractice claims or better equipped to handle any pre-trial proceedings").

8    Here, however, the bankruptcy judge is particularly familiar with the facts and legal issues

9    that underlie the claims, having presided over the resolution of over forty similar claims and

10   similar law firm bankruptcy proceedings.  Thus, the bankruptcy judge is better equipped to

11   handle any pre-trial proceedings.

12        Third, Defendants state that withdrawal is judicially efficient here because the claims

13   involve unsettled questions of California property and partnership law, upon which the

14   bankruptcy judge has already stated his views in the prior <u>Brobeck</u> litigation.  <u>See</u> Orrick

15   Request for Judicial Notice Exs. B & C.[4]  Thus, Defendants argue that to the extent there are

16   efficiencies to be gained from giving an experienced bankruptcy judge the first opportunity

17   to review a certain type of fraudulent transfer claim, those efficiencies have been captured by

18   virtue of the bankruptcy court's <u>Brobeck</u> decision.  The Court finds this factor underscores

19   the efficiency of keeping the case with the bankruptcy judge.  Withdrawal at this point would

20   forego the services of a bankruptcy court ready, willing and able to do its job.  The

21   bankruptcy judge here has the background and experience in the newly developing area of

22   substantive law involved and significant familiarity with the debtor law firm and similar

23   actions involving this plaintiff and the trustee of another law firm.  Efficiency mandates the

24   bankruptcy court's retention of this matter.

25

26              [3] Heller contends that discovery has begun and is ongoing.

27              [4] The Court GRANTS the Request for Judicial Notice as the Ninth Circuit has recognized that
         courts "may take notice of proceedings in other courts, both within and without the federal judicial
28       system, if those proceedings have a direct relation to matters at issue."  <u>United States ex rel. Robinson</u>
         <u>Rancheria Citizens Counsel v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992) (internal citations and
         quotations omitted).

**United States District Court**
For the Northern District of California

1    In addition, the Court finds several additional reasons support its conclusion.  First,

2    leaving the case with the bankruptcy judge at this point is consistent with Ninth Circuit law.

3    In re Healthcentral.com, 504 F.3d 775, 787 (9th Cir. 2007), gives bankruptcy judges

4    authority to resolve pre-trial matters in non-core proceedings, notwithstanding the lack of

5    consent from all parties.  "As has been explained before, this system promotes judicial

6    economy and efficiency by making use of the bankruptcy court's unique knowledge of Title

7    11 and familiarity with the actions before them.  Accordingly, if we were to require an

8    action's immediate transfer to the district court simply because there is a jury trial right we

9    would effectively subvert this system.  Only by allowing the bankruptcy court to retain

10   jurisdiction over the action until trial is actually ready do we ensure that our bankruptcy

11   system is carried out."  In re Healthcentral.com, 504 F.3d at 787-88 (citations omitted).

12   Since a final judgment is analogous to a jury trial right in that the ultimate decision-making

13   authority lies outside the bankruptcy court, but there are still efficiencies to be found within

14   the bankruptcy court, the reasoning of In re Healthcentral.com applies here as well.

15   Second, continuing to adhere to the dictates of In re Healthcentral.com accords with

16   the Supreme Court's statement in Stern that the decision should not "meaningfully change[]

17   the division of labor" in the bankruptcy statute between the bankruptcy and district courts.

18   131 S. Ct. at 2620.

19   Third, there is still much uncertainty about how the cases might progress prior to the

20   possibility of entry of a final judgment.  The remaining cases may settle before any such

21   rulings; pretrial proceedings might be complete and the matters ready for trial without any

22   party seeking a dispositive ruling as to part or all of the claims; dispositive motions might be

23   denied.  Given all these uncertainties, the Court finds that efficiency would not be served by

24   withdrawing the reference at this point in the case.

25    Finally, several other district courts have come to the same conclusion, focusing on

26   the efficiency of the bankruptcy system as a whole and the specific knowledge of bankruptcy

27   judges as to federally-created fraudulent conveyance actions.  For example, in In re The

28   Mortgage Store, Inc., the Court stated: "Withdrawal of [the] reference at this stage would

14

result in this court losing the benefit of the bankruptcy court's experience in both the law and facts, resulting in an inefficient allocation of judicial resources."  2011 WL 5056990, at *7. This was because "the bankruptcy court has unique knowledge of Title 11 and has a high level of familiarity with this action given the multiple motions it has already presided over." Id.

This is analogous to the situation here, where the bankruptcy judge has a high level of familiarity with the action as whole, has already presided over motions and the resolution of many of the actions, and has familiarity with the legal issues.  See also Kelley, 2011 WL 4403289, at *9 (stating "retention of proceedings by the bankruptcy court functions to make best use of the specialized expertise of the bankruptcy judiciary, in the substantive law of fraudulent and preferential transfers, the Bankruptcy Code's specific governance over its avoidance remedies, the law of unjust enrichment, and the analysis of record evidence," particularly when the bankruptcy judge has presided over the large bankruptcy for a protracted period of time, and even where analogous cases were already pending in the district court); In re Canopy Financial, Inc., 2011 WL 3911082, at *12-13 ("The Court therefore holds that American Express had failed to show cause for withdrawing the reference of these proceedings to the Bankruptcy Court."); Birdsell v. Schneider, No. 11-0484, 2011 WL 1540145, at *2 (D. Ariz. Apr. 22, 2011) ("[E]ven where withdrawal of the reference may ultimately be necessary, we may choose not to withdraw immediately so as to take advantage of the bankruptcy court's familiar[ity] with the facts and expertise in the law.").

These reasons are persuasive.  The bankruptcy court has already dealt with the many aspects of the bankruptcy case as a whole, and the fraudulent conveyance claims specifically, for several years.  It has dealt with substantive motions to dismiss the fraudulent conveyance claims, and has experience with the issues, both specific to this case, and to law firm bankruptcies, and fraudulent conveyance actions more generally.  Allowing the case to proceed in bankruptcy court accords with the direction in Stern that it did not change in large

1    part the division of labor between the bankruptcy and district courts.  Thus, the Court finds

2    that judicial efficiency would not be served by withdrawing the reference at this time.

3                    **b.        Delay and Costs to the Parties**

4            Defendants argue that since any bankruptcy rulings would need to be reviewed *de*

5    *novo*, failing to withdrawing the reference would add delay and cost.  See In re Daewoo

6    Motor Am., Inc., 302 B.R. 308, 315 (C.D. Cal. 2003) (fact that bankruptcy court's

7    determinations are subject to *de novo* review "could lead [the district court] to conclude that

8    in a given case unnecessary costs could be avoided by a single proceeding in the district

9    court").  Defendants also state that "the costs of litigation are so substantial compared to the

10   alleged damages that denying the reference may compel the parties into settlement, thus

11   foreclosing any opportunity for an authorized court to review the important issues presented

12   in this case." Jones Day Reply at 12.

13           This argument is also unpersuasive.  For example, in In re Daewoo Motor America,

14   Inc., cited by Defendants, the district court actually declined to withdraw the reference,

15   finding that "[n]onetheless, given the bankruptcy court's prior consideration of some of the

16   issues in this matter" the factors supported keeping the proceeding in the bankruptcy court.

17   302 B.R. at 315; see also Vertkin v. Jaroslkovsky, No. 10-1359, 2010 WL 2486519, at *2

18   (N.D. Cal. June 15, 2010) (finding that since the "case commenced several years ago before a

19   bankruptcy judge, transfer would also entail some duplication or even waste" of resources).

20           Here, the bankruptcy judge is familiar with and has already considered some of the

21   issues in this matter.  It appears discovery is proceeding apace.  If this Court ultimately is

22   called upon to make a final judgment in this action, it is not clear that such a procedure will

23   cause unnecessary delay and costs, particularly given the efficiencies of having the

24   bankruptcy court deal with the issues in the first instance.

25                    **c.        Uniform Administration of the Bankruptcy Case**

26           Defendants argue withdrawal will not interfere with the uniform administration of the

27   bankruptcy case because the claims present issues of state law independent from issues of

28   bankruptcy administration.

United States District Court
For the Northern District of California

1   The Court is not persuaded by this argument.  The fraudulent conveyance claims arise

2   under federal bankruptcy law as well as state law.  Fraudulent conveyance actions as set forth

3   in 11 U.S.C. § 548 are a creation of federal statute for application in bankruptcy proceedings.

4   In re Innovative Comm. Corp., 2011 WL 3439291, at *3.  Heller's claims do arise from

5   bankruptcy law (11 U.S.C. §§ 544(b) & 548) and would not exist but for the bankruptcy,

6   unlike the counterclaims in Stern.

7   Moreover, when the bankruptcy has proceeded for several years withdrawal may

8   "undermine the uniform administration of bankruptcy proceedings."  Vertkin, 2010 WL

9   2486519, at *2; see also Hawaiian Airlines, Inc. v. Mesa Air Group, Inc., 355 B.R. 214, 224

10  (D. Haw. 2006) (holding that "where bankruptcy judge had significant exposure to many

11  relevant factual and legal issues through bankruptcy proceedings, he can best address this

12  particular adversary proceeding while ensuring the uniform, efficient administration of the

13  entire bankruptcy estate, and that this matter will proceed through bankruptcy with minimal

14  delay") (internal quotation marks and alterations omitted).  This is the situation here as well.

15                          **d.      Forum Shopping**

16  Heller argues forum shopping is at the heart of the motion to withdraw the reference.

17  The bankruptcy judge has ruled in large part against the Defendants in the Motions to

18  Dismiss, and the implications of his earlier Brobeck decision point to a finding that the

19  transfers may be fraudulent conveyances that must be returned to the bankruptcy estate.

20  Thus, Heller argues Defendants are merely attempting to get away from an unfriendly judge.

21  Defendants argue that the bankruptcy judge's views on the state law Jewel Waiver

22  issues have been public since 2009 when the court rendered its summary judgment opinion in

23  Brobeck.  Yet, Defendants did not move to withdraw the reference at the start of the case, or

24  even after the motions to dismiss were denied, but only after the Supreme Court decided

25  Stern, and there appeared to be questions about the bankruptcy court's ability to finally

26

27

28

17

United States District Court
For the Northern District of California

1  adjudicate the case.[5]  Perhaps Defendants would not be here if the bankruptcy judge had

2  come out the other way in <u>Brobeck</u>, but the Court does not believe this factor points strongly

3  in either direction.

4      Thus, after examining the factors, the Court finds Defendants have failed to establish

5  cause for withdrawal of the reference.  Given the bankruptcy judge's familiarity with the

6  case, his expertise on bankruptcy issues and fraudulent conveyance claims in particular, the

7  dictates of <u>Stern</u> as not meaningfully changing the division of labor in the statute, the fact

8  that the majority of the claims have already been settled, and that some discovery and

9  motions practice has already gone forward, the Court declines to exercise its discretion to

10 withdraw the reference at this time.[6]

11 **IV.   CONCLUSION**

12     For the foregoing reasons, the Court holds that the bankruptcy court has statutory

13 authority to hear the case, and issue proposed findings of fact and conclusions of law under

14 <u>Stern</u>.  The Court thus DENIES the motions to withdraw the reference at this time.

15     **IT IS SO ORDERED.**

16

17

18 Dated: December 13, 2011          _____
                                    CHARLES  R. BREYER
19                                  UNITED STATES DISTRICT JUDGE

20  _____

21     [5] This also undercuts Heller's argument that the motion to withdraw the reference is untimely.
   The Defendants filed the motion shortly after the Supreme Court decided <u>Stern</u>, and thus it is not
22 untimely even though the fraudulent conveyance actions themselves had been pending for many months
   already.  <u>See</u> <u>Sec. Farms</u>, 124 F.3d at 1007 n.3; <u>In re Coudert Brothers LLP</u>, 2011 WL 5244463, at *8-9
23 (rejecting similar argument that defendants should have anticipated <u>Stern</u> by filing a motion to withdraw
   at the commencement of the case).

24
       [6] The Court is aware that the Ninth Circuit has asked for amicus briefing addressing the issues
25 in this Order, and the parties are free to renew this motion at a later date based upon the ultimate
   resolution of that case.  <u>See</u> <u>Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency,</u>
26 <u>Inc.)</u>, No. 11-35162, 2011 WL 5307852, at *1 (9th Cir. Nov. 4, 2011) (inviting supplemental briefs by
   amicus curiae addressing the following questions: Does <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011),
27 prohibit bankruptcy courts from entering a final, binding judgment on an action to avoid a fraudulent
   conveyance?  If so, may the bankruptcy court hear the proceeding and submit a report and
28 recommendation to a federal district court in lieu of entering a final judgment?)  Such briefs are due
   thirty days from the filed date of the order.  <u>Id.</u>